## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| GERARDO CARVALHO,<br><br>                    Plaintiff,<br><br>v.<br><br>AIRCRAFT SERVICE INTERNATIONAL,<br>INC., et al.<br><br>                Defendants. | Civil Action No. 12-2430 (JLL)<br><br><br>**OPINION** |

**LINARES,** District Judge**.**

       This matter comes before the Court by way of Defendant Aircraft Service International, Inc. ("ASII" or "Defendant")'s motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. The Court has considered the submissions made in support of and in opposition to Defendant's motion and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Defendant's motion is GRANTED.

## I.      BACKGROUND[1]

       This action arises out of ASII's allegedly wrongful termination of Plaintiff Gerardo Carvalho ("Plaintiff" or "Carvalho")'s employment on June 30, 2010. Plaintiff maintains that ASII wrongfully terminated his employment because he received worker's compensation benefits after sustaining injuries in the workplace, and took leave to attend to a medical condition

---

[1] The facts set forth herein are taken from ASII's Rule 56.1 Statement of Undisputed Material Facts. Except where otherwise noted, these facts are deemed to be undisputed. It bears mentioning that Plaintiff's Response to Plaintiff's Statement of Undisputed Material Facts fails to comply with Local Civil Rule 56.1 as his response was attached as part of his brief. *See* Loc. Civ. R. 56.1 ("Each statement of material facts shall be a *separate document* (*not part of a brief)*. Additionally, the Court notes that Plaintiff did not submit a Supplemental Statement of Undisputed Material Facts, as was his right under Local Civil Rule 56.1.

and to care for his ailing father.  ASII, on the other hand, contends that it terminated Plaintiff's employment as a result of Plaintiff's failure to comply with its safety policies.

On March 14, 2012, Plaintiff filed a three-count complaint in state court alleging: (1) workers' compensation retaliation in violation of N.J.S.A. 34:15-39.1; (2) violation of the New Jersey Family Leave Act ("NJFLA"), N.J.S.A. 34:11B-1 *et seq.*; and (3) failure to maintain effective anti-discrimination and anti-retaliation policies and procedures in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1.  In his complaint, Plaintiff also seeks punitive damages.

On April 24, 2012, ASII removed the state court action to this Court pursuant to 28 U.S.C. § 1446(a) and 28 U.S.C. § 1332 .  Defendant moved for summary judgment on August 23, 2013.

A.      Plaintiff's Employment at ASII

ASII is a provider of commercial aviation services.  (Pl. Statement of Undisputed Material Facts ("SUMF") at ¶ 1.)  Newark Liberty International Airport ("Newark Airport") contracts with ASII to provide, among other things, fueling, customer service, and ground handling support to aircraft.  (*Id.* at ¶ 2.)

On June 13, 2008, ASII hired Plaintiff to work at Newark Airport as a Ground Service Equipment ("GSE") Mechanic.  (*Id.* at ¶ 28.)  As a GSE Mechanic, Plaintiff's responsibilities included, among other things, operating and testing ground equipment for performance assessment; inspecting, maintaining, and modifying ground equipment used in the support of ASII operations; servicing equipment with fuel, water, oil, hydraulic fluid, and compressed air; and troubleshooting, repairing, overhauling, and modifying ground equipment.  (*Id.* at ¶ 32.)  Additionally, Plaintiff was expected to comply with ASII's safety policies and procedures.  (*Id.*)

Plaintiff generally worked the 11:00 a.m. to 7:30 p.m. shift from Monday through Friday and reported to the GSE Manager, Alfonzo Christian ("Christian"). (*Id.* at ¶¶ 29, 30.) Christian, in turn, reported to Timothy Johnson, the General Manager of the Newark Airport location. (*Id.* at ¶ 31.)

B.     Plaintiff's Work-Related Injuries

1.     Plaintiff's First Work-related Injury – March 18, 2009

On March 18, 2009, Plaintiff sustained an on-the-job injury after a safety tow bar struck him on the head. (*Id.* at ¶¶ 36.) According to Plaintiff, he immediately reported this injury to Christian, who allegedly minimized the extent of his injury. (*Id.* at ¶ 37.) Shortly thereafter, Plaintiff received stiches from the medical clinic located at Newark Airport. (*Id.* at ¶ 38.) The physician who treated Plaintiff instructed him that he could return to work without any restrictions. (*Id.* at ¶ 40.)

Following Plaintiff's injury, Brian Giacona ("Giacona")—ASII's Health Saftey & Environmental Manager—filed an accident/incident report. (*Id.* at ¶¶ 41-42.) ASII also notified its workers' compensation insurer of Plaintiff's injury. (*Id.* ¶ 44.) Plaintiff, nevertheless, did not file a workers' compensation claim for his March 18 injury because the injury was minor. (*Id.* at ¶ 44.)

Subsequent to the March 18 injury, Plaintiff returned to work without incident and received his first performance evaluation from Christian. (*Id.* at ¶¶ 49-50.) In his evaluation of Plaintiff, Christian noted that Plaintiff met his job requirements. (*Id.* at ¶ 51.) Consequently, Plaintiff received a pay increase. (*Id.* at ¶ 52.)

2.     Plaintiff's Second Work-Related Injury – October 15, 2009

On October 15, 2009, Plaintiff injured his right palm at work and immediately reported the incident to Christian.  (*Id.* at ¶ 53.)  Plaintiff acknowledged that he refused to seek medical treatment for his injury, although he was offered the opportunity to do so.  (*Id.* at ¶ 54.) Consequently, Plaintiff did not miss any time from work.  (*Id.* at ¶ 55.)  ASII did not take any adverse action against Plaintiff as a result of this injury.  (*Id.* at ¶ 56.)

       3.     <u>Plaintiff's Third Work-Related Injury – November 5, 2009</u>

While at work on November 5, 2009, a metal rod struck Plaintiff on the head and fractured the bone above his left eye.  (*Id.* at ¶ 57.)  A U.S. Airways employee, for whom Plaintiff was making equipment repairs, called an ambulance to transport Plaintiff to a nearby hospital.  (*Id.* at ¶ 58.)  Plaintiff was admitted and discharged from the hospital on the same day, but underwent surgery towards the end of 2009.  (*Id.* at ¶ 59.)  As a result, Plaintiff took a leave of absence from work until December 14, 2009.  (*Id.* at ¶ 60.)

Plaintiff promptly sought, and received workers' compensation benefits for at least six weeks following this injury.  (*Id.* at ¶ 61.)  Additionally, Plaintiff filed claims for workers' compensation and products liability against U.S. Airways.  (*Id.* at ¶¶ 62-63.)  In his products liability complaint, filed in state court on October 28, 2011, Plaintiff alleged that his injury resulted from a dangerous, defective and hazardous condition, namely, a metal pipe rod.  (*Id.* at ¶ 64.)  Plaintiff also alleged that he incurred medical expenses, extensive physical therapy and treatment, and was unable to pursue his usual activities and pursuits as a result of his injury.  (*Id.* at ¶ 64.)

When Plaintiff returned to work on December 14, 2009, he re-assumed all of his responsibilities, although he claims to have had some restrictions pertaining to his driving.  (*Id.* at ¶ 66.)  Plaintiff also claims that Christian subjected him to certain discriminatory actions upon

his return to work.  (*Id.* at ¶ 67.)  Specifically, Plaintiff maintains that Christian would assign him new tasks before he could complete old ones.  (*Id.* at ¶ 68.)  Plaintiff, nevertheless, acknowledged that he never complained to anyone about Christian's alleged discriminatory action.  (*See id.* at ¶ 69.)

Plaintiff further maintains that he had difficulty obtaining Christian's permission to order new parts for equipment.  (*Id.* at ¶ 70.)  Plaintiff did not bring this to anyone's attention, however, because "[obtaining parts] was a problem amongst all employees, all mechanics, so everyone knew about [it]."  (*Id.* at ¶ 71, quoting Pl. Dep. Trans. 163:19-164:15, 166:16-19.)  Moreover, Plaintiff admitted that Christian's decisions with respect to ordering parts were dependent on whether ASII owned the equipment being serviced; in other words, the decision regarding ordering new parts depended on whether costs would be passed to a customer (i.e., the airline) or had to be absorbed by ASII.  (*Id.* at ¶ 72.)

C.    Plaintiff's Medical Leaves of Absence

In March 2010, Plaintiff requested a leave of absence under the Family Medical Leave Act ("FMLA") to attend to a medical condition.  (*See id.* at ¶¶ 73-74.)  ASII approved his leave from March 10, 2010 through March 14, 2010.  (*Id.*)  After Plaintiff returned to work, he requested and was approved for a second FMLA leave of absence to care for his ailing father.  (*Id.* at ¶ 75.)  Consequently, Plaintiff was on FMLA leave from March 17, 2010 through May 30, 2010.  (*Id.* at ¶ 76.)

ASII designated Plaintiff's second FMLA leave as unpaid because Plaintiff had already exhausted all of his allotted paid leave.  (*Id.* at ¶ 77.)  After exhausting his FMLA leave, Plaintiff returned to work.  (*Id.* at ¶ 78.)

D.    Events Leading to ASII's Termination of Plaintiff's Employment

On June 24, 2010, Plaintiff punched in to work at 11:00 a.m. (*Id.* at ¶ 79.) Thereafter, he repaired a belt loader by changing the equipment's hydraulic pump and steering cylinder. (*Id.* at ¶ 80.)

On the evening of June 24, 2010, Plaintiff placed the repaired belt loader back into service. (*Id.* at ¶ 83.) Later, Jeanine Constantino, the Manager at Newark Airport's Terminal A, called Christian (who had left work for the day) to inform him that a ground handler was operating the belt loader when the equipment failed. (*Id.*) Constantino purportedly told Christian that the belt loader nearly came into contact with an aircraft and leaked approximately five to ten gallons of hydraulic fluid on the ramp at Gates 10, 11, and 12. (*Id.* at ¶ 84.)

Immediately following Constantino's call, Christian returned to work, secured and tightened the belt loader's loose hydraulic lines, replaced the belt loader's hydraulic fluid, and cleaned the leaked fluid in accordance with ASII's standards. (*Id.* at ¶ 85.) According to ASII, Christian subsequently notified Giacona, Johnson, and the Human Resources Manager, Margherita Margotta ("Margotta"), of the incident. (*Id.* at ¶ 86.)

ASII maintains that Plaintiff failed to report to work on either Friday, June 25, 2010 or June 28, 2010. (*Id.* at ¶ 87.)[2] Thus, Plaintiff did not receive pay for those missed days of work. (*Id.*)

On June 29, 2010—five days after the incident—Plaintiff returned to work. (*Id.* at ¶ 88.) Upon his return to work, Christian asked Plaintiff for the Repair Work Order for the belt loader in question. (*Id.* at ¶ 89.) According to ASII, Plaintiff submitted a Repair Work Order form[3] on

---

[2] Plaintiff denies that he failed to report to work on either June 25 or June 28, 2010, as he testified that he worked on these dates during his deposition. However, according to the copy of Plaintiff's "clock-in and out" timesheet for the period of June 24-30, 2010, attached as Exhibit 27 to Defense Counsel's certification, there is no record of Plaintiff having worked on these dates.

[3] ASII requires employees to complete a Repair Work Order Form in connection with repairs at the time that the repairs are made, an obligation that ASII's employees are aware of. (*Id.* at 81.)

which he handwrote that: (1) he had worked on the belt loader on June 24, 25, and 29, 2010; (2) he tested the belt loader and noted that there were no leaks; and (3) he had driven the equipment to the ramp to be placed into service on June 29. (*Id.* at ¶ 90.)[4]

Christian and Giacona then met with Margotta to report the findings of Christian's examination of the equipment involved in the incident, as well as to provide the Repair Work Order and Secure ticket. (*Id.* at ¶ 91.)

Plaintiff claims that when he reported to work on June 30, 2010, he was instructed not to "punch in" and to report to the Human Resources office. (*Id.* at ¶ 92.) At the Human Resources office, Plaintiff met Margotta and Christian. (*Id.*) During this meeting, Plaintiff attempted to explain why, in mechanical terms, he repaired the belt loader as he did; Plaintiff also refuted accusations that he did not repair the belt loader properly. (*See* Pl. Dep. Tr. 171:17-173:2.) Margotta then informed Plaintiff that his employment was being terminated because of his improper repair of the belt loader which could have caused a safety hazard. (Def. SUMF at ¶ 96.)

    E.    <u>ASII's Policies on Safety, Equal Employment Opportunity, and Anti-Retaliation</u>

        1.    <u>Safety</u>

ASII's mission is to provide a safe work environment and deliver the highest quality of commercial aviation training. (*Id.* at ¶ 3.) To reinforce ASII's commitment to safety, and to ensure that ASII meets all federal, state, and local regulatory requirements, ASII requires its employees to successfully complete initial and recurrent training programs as a condition of employment. (*Id.* at ¶ 4.)

---

[4] Plaintiff notes that during his deposition, he could not recall whether he drove the belt loader to the ramp subsequent to the repair. (Pl. Resp. SUMF at ¶ 90.)

ASII's comprehensive employee training and safety program, which is designed to ensure a safe environment, addresses specific requirements for the safe operation of facilities and equipment, including explicit procedures for handling aircraft and property. (*Id.* at ¶ 5.) Additionally, ASII has developed programs addressing customer service, quality control, and vehicle maintenance and fuel quality control. (*Id.* at ¶ 6.)

The emphasis that ASII places on safety is communicated to employees through various methods, including the Safety Policy contained in the Company's Information Guide (the "Guide"). (*Id.* at ¶ 8.) Along with the Guide, ASII also provides employees with copies of its Secure Program Policy, Work Rules, and a memorandum distributed to employees entitled, "A Safety Commitment from the President," which further emphasizes the importance of safety in the workplace. (*Id.* at ¶ 9.)

ASII's Guide, as well as its Secure Program Policy, set forth a general, progressive discipline process applicable to employee misconduct. Although ASII tries to improve employees' performance through progressive discipline and training, the appropriate response to a safety infraction depends on the gravity of said infraction. For this reason, ASII retains discretion to deviate from its policies, including the Secure Program Policy, and deal with each disciplinary case individually. (*Id.* at ¶ 10.)

The Guide lists several offenses which are deemed contrary to the best interests of ASII and its employees, and which may therefore result in immediate discharge for a single violation without progressive discipline. (*Id.* at ¶ 11.) Among these offenses are safety violations, including the failure to comply with health and safety regulations; the failure to comply with the training and safety manuals and policies; the failure to operate equipment in a safe manner; and the failure to report an accident or injury, no matter how minor, immediately to management.

(*Id.*)  The Guide also mandates that both the General Manager and the Human Resources department must approve terminations.  (*Id.* at ¶ 12.)

Under ASII's Safety Policy, employees are required to observe and practice the standard safety procedures ("SSPs") established for their job at all times.  (*Id.* at ¶ 13.)  The SSPs are monitored and enforced by ASII's Secure Program Policy.  While such SSPs are enumerated, the list is not inclusive of each and every violation of ASII's safety standards.  (*Id.* at ¶ 14.)  When an employee violates the Secure Program Policy, he is issued a Secure ticket, which identifies the specific SSP which the employee failed to follow.  (*Id.* at ¶ 15.)

## 2.    Equal Employment and Anti-Retaliation

According to ASII, it is an equal opportunity employer that maintains established policies prohibiting harassment, discrimination and retaliation, as well as a complaint procedure and a toll-free number to facilitate the reporting of any possible violations.  (*Id.* at ¶16.)[5]  Plaintiff received and acknowledged his receipt of these policies upon commencement of his employment on June 13, 2008, and throughout his employment.  (*Id.* at ¶ 17.)  Plaintiff similarly acknowledged receipt of ASII's Anti-Harassment training material and policy, and affirmed that it was his responsibility to read, understand, and comply with the policies established by ASII, and to ask the appropriate Human Resources representative for assistance if he did not understand any portions of the policy.  (*Id.* at ¶ 18.)

ASII also claims that Plaintiff acknowledged his understanding that if he felt that he was a victim of discrimination or harassment, that he should promptly report that to his local or corporate Human Resources representative by any of the various avenues available to him – including by way of the toll-free number.  (*Id.* at ¶ 19.)  Plaintiff challenges this assertion on the grounds that employees did not feel that they could address discrimination-related issues, and

_____
[5] Plaintiff denies that these policies are effective.  (Pl. Resp. SUMF at ¶ 16.)

that he was terminated without receiving an opportunity to explain his actions. (*See* Pl. Resp. SUMF at ¶ 19.)

ASII's Employee Information Guide sets forth ASII's anti-discrimination and anti-retaliation policies, and its commitment to a work environment free of prejudice, discrimination or harassment. (Def. SUMF at ¶ 24.) The Employee Information Guide also provides that decisions relating to all areas of employment, including termination, shall be made without regard to any classification protected by law. (*Id.*) Plaintiff acknowledged receipt of ASII's Employment Information Guide on April 24, 2009. (*Id.* at ¶ 25.)

ASII also provides eligible employees with leave under the Family Medical Leave Act ("FMLA"), and applicable state laws. (*Id.* at ¶ 26.) ASII's FMLA policy states that upon return from FMLA leave, an employee will be restored to his or her original job, or to an equivalent job with equivalent pay, benefits, and other terms and conditions of employment. (*Id.* at ¶ 27.)

F.     Plaintiff Alleges Retaliation

Plaintiff initiated the instant litigation by filing a complaint seeking the following relief: (1) damages for being discharged in retaliation for seeking and obtaining workers' compensation benefits; (2) damages for being discharged in retaliation for taking leave to care for his ailing father in violation of the New Jersey Family Leave Act ("NJFLA"), N.J.S.A. 10:5-1; (3) damages under the NJLAD for ASII's failure to institute or implement any preventative or remedial measures to protect against discrimination and retaliation; and (4) punitive damages. (*See id.* at ¶¶ 97-98.)

In support of his workers' compensation claim, Plaintiff relies on the following: (a) the fact that his employment terminated shortly after he filed his workers' compensation claim; (b) a fellow co-worker, Melvin Aquino, was allegedly similarly discharged under the guise of an

improper repair after he injured himself at work; (c) his belief that ASII was not happy about the fact that he filed a workers' compensation claim; (d) his belief that his employment terminated because his injury was more serious and could have been worse than other employees' work-related injuries; (e) Christian's comments to Jonathan Rodrigues ("Rodrigues"), Plaintiff's former co-worker, which Rodrigues understood as suggesting that Plaintiff's employment would be terminated; and (f) Plaintiff's belief that Christian treated him differently when he returned to work from his November 5, 2009 injury.  (*Id.* at ¶ 99.)

When, during his deposition, Plaintiff was asked why he believed that he was retaliated against for taking FMLA, Plaintiff responded that his absence for "an extended period of time affected the company [i.e., ASII] . . . [and] the mechanic shop."  (Pl. Dep. Tr. at 214:1-5.) Additionally, Plaintiff claims that the accusation that he improperly repaired the belt loader "doesn't make any mechanical sense."  (*Id.* at 199:8-12.)  Specifically, Plaintiff takes issue with the alleged instructions Christian gave him with respect to repairing the belt loader.  Plaintiff claims that Christian instructed him to "remove new parts and reinstall original parts," and claims that this instruction was "inappropriate."  (Pl. SUMF at ¶ 103.)  Although Plaintiff maintains that he informed Christian at the time of repair that the instructions did not make sense to him, he did not make anyone aware of his issue with Christian's instructions until his deposition, nearly two and a half years after the incident.  (*Id.* at ¶¶ 105-06.)

Finally, Plaintiff believes that the termination of his employment was improper because he was not given a written warning, and was treated differently than other employees who made mistakes in repair work.  (*Id.* at ¶ 111.)  Nevertheless, Christian testified that he has not recommended progressive discipline for any employee.  (*Id.* at ¶ 112.)  Additionally, the record suggests that other employees have been terminated for failing to comply with ASII's safety

protocols. (*Id.* at ¶¶ 114-15.) Specifically, former ASII employees Eriberto Rodriguez ("Rodriguez") and Melvin Aquino ("Aquino") were terminated for "[i]mproper chocking and shutting off a vehicle" and the faulty repair of a vehicle, respectively. (*Id.*)

It is undisputed that ASII did nothing to prevent Plaintiff from making or trying to make a claim for workers' compensation benefits in connection with his November 5, 2009 injury. (*Id.* at ¶ 123.) It is also undisputed that since 2009, more than 125 ASII employees at Newark Airport have filed for workers' compensation benefits and have thereafter returned to active employment. (*Id.* at ¶ 125.)

## II.    LEGAL STANDARD

"Summary judgment should be granted only 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Bender v. Twp. of Monroe*, 289 F. Appx. 526, 526-27 (3d Cir. 2008) (quoting Fed. R. Civ. P. 56(c)). On a summary judgment motion, the moving party must first show that there is no genuine issue of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. *Id.* at 324. The non-moving party must offer specific facts that establish a genuine issue of material fact; the non-moving party may not simply rely on unsupported assertions, bare allegations, or speculation. *See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999). The Court must consider all facts presented and the reasonable inferences drawn from them in the light most favorable to the non-moving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

## III.    JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

## IV. LEGAL DISCUSSION

In moving for summary judgment as to all of Plaintiff's claims, ASII makes the following arguments: (1) Plaintiff cannot establish a prima facie case of workers' compensation retaliation; (2) Plaintiff's NJFLA claim fails as a matter of law because he cannot establish that his discharge was causally connected to his leave of absence; (3) Plaintiff's NJLAD claim for ASII's alleged failure to institute or implement preventative or remedial measures to protect against discrimination and retaliation must be dismissed because no such cause of action exists under New Jersey law; and (4) no punitive damages should be awarded because ASII has not engaged in egregious behavior. The Court will now proceed to address the merits of ASII's arguments.

### A. Whether Summary Judgment Should be Granted as to Plaintiff's Workers' Compensation Retaliation Claim

The New Jersey Workers' Compensation Act makes it unlawful for an employer "to discharge or in any other manner discriminate against an employee as to his employment because such employee has claimed or attempted to claim workmen's compensation benefits from such employer." *See* N.J.S.A. 34:15-39.1. New Jersey courts have recognized that employees who are discharged for seeking and obtaining workers' compensation benefits are entitled to bring a cause of action for retaliatory discharge. *See, e.g., Lally v. Copygraphics*, 85 N.J. 668, 670 (1981) ("In particular we endorse the conclusion of the Appellate Division that there exists a common law cause of action for civil redress for retaliatory firing that is specifically declared unlawful under N.J.S.A. 34:15-39.1 and 39.2.").

"In order to establish a prima facie case for retaliatory discharge, the employee must prove that: (1) he or she attempted to make a claim for workers' compensation benefits; and (2) he or she was discharged for making that claim." *Morris v. Siemens Components*, 928 F. Supp.

486, 493 (D.N.J. 1996) (citing *Lally*, 85 N.J. at 668). If a plaintiff establishes a prima facie case of retaliatory discharge, the claim is then analyzed under the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g., Morris*, 928 F. Supp. At 493 ("In analyzing a retaliatory discharge claim under New Jersey law, courts look to correlative federal law to supply the burden shifting framework and relevant standards for evaluating the claim.") (citing *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1212 (3d Cir. 1995)).

Under the *McDonnell Douglas* framework, a plaintiff bears the initial burden of establishing a prima facie case. *See McDonnell Douglas*, 411 U.S. at 802. If a plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate "some legitimate, nondiscriminatory reason for" its action. *Id.* If the defendant does this, the plaintiff must then "show that the defendant's proffered reasons for the discharge are not worthy of belief and that the defendant acted with intent to retaliate unlawfully." *Morris*, 928 F. Supp. at 493 (citations omitted).

Here, it is undisputed that Plaintiff engaged in statutorily protected activity when he filed a claim for workers' compensation benefits, and that he suffered an adverse employment action when his employment was terminated eight months later, on June 30, 2010. The issue in dispute is whether ASII terminated Plaintiff's employment *because* he made a claim for workers' compensation benefits.

According to ASII, the record is devoid of any evidence to suggest that there is a nexus between Plaintiff's claim for workers' compensation benefits and ASII's decision to terminate his employment. Plaintiff, on the other hand, argues that that a reasonable jury may find that he has established a prima facie case of workers' compensation retaliation based on: (1) his belief that Christian discriminated against him upon his return to work following the November 5, 2009

injury; (2) the fact that Christian made comments to Rodrigues, which Rodrigues understood to mean that Christian intended to terminate Plaintiff's employment; (3) Plaintiff's assertions that the infraction leading to the spill of hydraulic oil was "fairly minor," and that ASII exaggerated the severity of his error in repairing the belt loader as a pretext to terminate his employment; and (4) ASII's allegedly wrongful termination of Aquino and Rodriguez based on faulty repairs after these employees returned from medical leave. None of the facts upon which Plaintiff relies suggest that ASII terminated Plaintiff's employment *because* he filed for, and obtained workers' compensation benefits.

First, Plaintiff's subjective belief that Christian discriminated against him upon his return to work following the November 5, 2009 injury does not create a triable issue with respect to whether Christian (or ASII) had a retaliatory motive. *See, e.g., Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 502 (3d Cir. 1991) (holding that plaintiff's subjective belief of discriminatory motive was an insufficient basis to challenge the district court's finding that termination of plaintiff's employment was not in retaliation for anything) (interpreting retaliation under the Age Discrimination in Employment Act); *see also Gerety v. Atl. City Hilton Casino Resort*, No. A-0365-06T5, 2008 N.J. Super. Unpub. LEXIS 2807, at *9 (App. Div. Feb. 29, 2008) (affirming trial court's conclusion that "[t]he mere subjective belief of a plaintiff is not sufficient [to establish retaliation]. If that were the test, paranoia would control.") (interpreting retaliation under the NJLAD).

Second, Rodrigues' inference as to the meaning of Christian's comments is not probative of retaliation. During his deposition, Rodrigues testified that Christian told him that Plaintiff was "always getting hurt." (Rodrigues Dep. Tr. 15:9-24.) Notably, however, Christian did not specifically tell Rodrigues that he was planning to terminate Plaintiff's employment. Rodrigues

acknowledged that his interpretation of Christian's comment as meaning that ASII was "looking to get rid" of Plaintiff was "just . . . speculation." (Rodrigues Dep. Tr. at 21:1-4.) Rodrigues' speculation as to the meaning of Plaintiff's comments is insufficient to raise a genuine issue of material fact as to whether Plaintiff has satisfied his burden of establishing a prima facie case of retaliation. *See Ridgewood Bd. of Educ.*, 172 F.3d at 252; *see also Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992) ("Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision."); *Gomez v. Con-Way Cent. Express Inc.*, No. 06-cv-5352, 2009 U.S. Dist. LEXIS 23190, at **36-37 (D.N.J. Mar. 24, 2009) ("In addressing an attempt to defeat a workers' compensation claim by summary judgment, a district court observed, 'Speculative allegations are insufficient to establish a causal connection between an employee's claim for worker compensation benefits and his termination.'") (internal citations omitted).

Third, Plaintiff's characterization of the faulty repair that resulted in the spill of hydraulic fluid as "fairly minor" is legally irrelevant. *See, e.g., Billet v. CIGNA Corp.*, 940 F.2d 812, 825 (3d Cir. 1991) (holding that employee's "view of his performance is not at issue; what matters is the perception of the decision maker."), *overruled on other grounds by St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993). The question before the Court is not whether there is a factual question as to the severity of Plaintiff's faulty repair of the belt loader, but whether there is a factual question as to whether ASII retaliated against Plaintiff for seeking and obtaining workers' compensation benefits.

Fourth, Plaintiff's suggestion that ASII's termination of Aquino and Rodriguez's employment shows that ASII had a custom of terminating employees for taking medical leave does not create a triable issue as to whether ASII retaliated against Plaintiff for obtaining

workers' compensation benefits. Nothing in the record suggests that Aquino or Rodriguez actually sought or received workers' compensation benefits. If anything, ASII's treatment Aquino and Rodriguez compels the grant of summary judgment in favor of ASII as these individuals do not fall within the protected class of which Plaintiff is a member—that is, the class of individuals who seek and obtain workers' compensation benefits. *See, e.g., Howell v. PPL Servs. Corp.*, 232 Fed. Appx. 111 (3d Cir. Apr. 19, 2007) (affirming grant of summary judgment in employment discrimination case where plaintiff did not produce "sufficient admissible evidence that similarly-situated employees outside a protected class were treated more favorably or more leniently than [plaintiff] for having committed substantially similar offenses.").

Indeed, there is nothing in the record to substantiate Plaintiff's claim that his receipt of workers' compensation benefits played a role in ASII's decision to terminate his employment. Plaintiff does not dispute that ASII: (1) continued to employ more than 125 other employees who filed for workers' compensation benefits both before and after Plaintiff filed his claim; (2) did nothing to prevent Plaintiff from filing a claim for workers' compensation benefits; and (3) did nothing to prevent Plaintiff from receiving such benefits following his November 5, 2009 injury. Accordingly, insofar as ASII moves for summary judgment on Plaintiff's claim for workers' compensation retaliation, the motion is granted.[6]

B.  Whether Summary Judgment should be Granted as to Plaintiff's NJFLA Retaliation Claim

To survive summary judgment on his NJFLA retaliation claim, Plaintiff must set forth

---

[6] As Plaintiff has failed to establish a prima facie claim for workers' compensation retaliation, the Court need not consider whether ASII's purported reason for terminating Plaintiff's employment was merely pretextual under the *McDonnell Douglas* burden shifting framework.

sufficient facts to allow a reasonable jury to find that: "(1) plaintiff was employed by defendant; (2) plaintiff was performing satisfactorily; (3) a qualifying member of plaintiff's family was seriously injured; (4) plaintiff took or sought to take leave from his employment to care for his injured relative; and (5) plaintiff suffered an adverse employment action as a result." *See DePalma v. Building Inspection Underwriters*, 350 N.J. Super. 195, 213 (App. Div. 2002).

Defendant argues that Plaintiff cannot satisfy the second and fifth elements because Plaintiff's work performance was not satisfactory and there is nothing in the record to support a finding that ASII's decision to terminate Plaintiff was a result of his having taken NJFLA leave.

In his opposition, Plaintiff does not dispute ASII's assertion that his work performance was not satisfactory. Rather, Plaintiff appears to argue that there are sufficient facts in the record to suggest that ASII terminated his employment because he took leave under the NJFLA. Specifically, Plaintiff suggests that the Court should deny summary judgment as to his NJFLA claim based on the following facts: (1) Plaintiff was terminated shortly after taking leave; (2) the faulty repair of the belt loader was not an infraction of such severe proportions as to warrant termination; (3) Plaintiff had a record of satisfactory job performance until his employment was terminated; and (4) Rodrigues' interpretation of Christian's comments about Plaintiff as meaning that ASII intended to terminate Plaintiff's employment.

None of these facts are sufficient to survive summary judgment for the following reasons.

First, it is well settled that the close temporal proximity between a protected act and an adverse employment action, alone, is insufficient to raise an inference of retaliation. *See, e.g., Morris*, 928 F. Supp. at 493 ("Although the timing of a discharge may be significant, it, alone, cannot raise an inference of causation sufficient to establish a *prima facie* case of retaliation.") (citing *Quiroga*, 934 F.2d at 501).

Second, as discussed above, Plaintiff's perception that the faulty repair of the belt loader was not a severe infraction is irrelevant to the determination as to whether ASII retaliated against him for taking leave under the NJFLA.  *See, e.g., Billet*, 940 F.2d at 825.

Third, it is well settled that even though Plaintiff may have had a record of satisfactory job performance prior to his termination, this fact alone is insufficient to raise a triable issue as to whether ASII's stated reason for terminating Plaintiff's employment was a pretext for retaliation. *See Ezold*, 983 F.2d at 528 ("Pretext is not established by virtue of the fact that an employee has received some favorable comments in some categories or has, in the past, received some good evaluations."); *see also Cohen v. Pitcairn Trust Co.*, No. 99-5441, 2001 U.S. Dist. LEXIS 10876, at *29 (E.D. Pa. June 20, 2001) ("The fact that the termination occurred close in time to the request for [Family Medical Leave Act] leave is not sufficient to carry the plaintiff's burden.").

Finally, as previously discussed, Rodrigues' speculation as to what Christian meant by his comments regarding Plaintiff is insufficient to raise a triable issue as to whether ASII wrongfully retaliated against Plaintiff.  *See, e.g., Ridgewood Bd. of Educ.,* 172 F.3d at 252; *see also Gomez* 2009 U.S. Dist. LEXIS 23190, at *36-*37.

In light of Plaintiff's failure to point to any evidence in the record from which a reasonable jury may find that ASII retaliated against him for taking leave under the NJFLA, the Court will grant summary judgment as to Plaintiff's NJFLA retaliation claim.

C.      Whether Summary Judgment should be Granted as to Plaintiff's NJLAD Claim

Plaintiff appears to rely on *Lehman v. Toys 'R' Us, Inc.*, 132 N.J. 587 (1993) for the proposition that he has a viable NJLAD claim based on ASII's alleged failure to implement an effective anti-discrimination and anti-retaliation policy.   Plaintiff's reliance on *Lehman*, however, is misplaced.

The plaintiff in *Lehman* brought a claim against her employer for sexual harassment and hostile work environment under the NJLAD. *Lehman*, 132 N.J. at 592. The *Lehman* court noted that "[i]n light of the known prevalence of sexual harassment, a plaintiff may show that an employer was negligent by its failure to have in place well-publicized and enforced anti-harassment policies, effective formal and informal complaint structures, training, and/or monitoring mechanisms." *Id.*, 132 N.J. at 621. Notably, however, the *Lehman* court did not recognize an employer's failure to maintain an effective anti-discrimination or anti-retaliation policy *as an independent cause of action*. *See generally id.*

Indeed, Plaintiff fails to cite any legal authority recognizing an NJLAD cause of action based on an employer's failure to maintain anti-discrimination or anti-retaliation policies, and this Court is not aware of any. Accordingly, the Court will grant summary judgment as to Plaintiff's NJLAD claim.

D.   Whether Summary Judgment Should be Granted as to Plaintiff's Claim for Punitive Damages

Plaintiff's claims for punitive damages is governed by the New Jersey Punitive Damages Act. Under this statute,

> punitive damages may be awarded to a plaintiff only if the plaintiff proves by clear and convincing evidence, that the harm suffered was the result of the defendant's acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions. This burden of proof may not be satisfied by proof of any degree of negligence including gross negligence.

N.J.S.A. 2A:15-5.12.

Under New Jersey law, "a jury may not consider the issue of punitive damages until it has first decided that the defendant is liable and has awarded compensatory damages." *Gilvey v.*

*Creative Dimensions in Educ., Inc.*, No. A-3217-10T1, 2012 N.J. Super. Unpub. LEXIS 2052, at *14 (App. Div. Aug. 28, 2012) (citing N.J.S.A. 2A:15-5.13).  As the Court will grant summary judgment as to all of Plaintiff's substantive claims, it must also grant summary judgment as to Plaintiff's claim for punitive damages.  *See* N.J.S.A. 2A:15-5.13.

## V.    CONCLUSION

For the foregoing reasons, ASII's motion for summary judgment is granted in its entirety. An appropriate Order follows.


Dated: 8th of October, 2013.


                                          /s/ Jose L. Linares
                                          JOSE L. LINARES
                                          U.S. DISTRICT JUDGE